KRUEGER ET AL. *v.* BEECHAM ET AL.

[No. 17,299.    Filed May 18, 1945.    Rehearing Denied June 12, 1945.    Transfer Denied July 20, 1945.]

*Bingham, Cook & Bingham,* of Indianapolis, and *Gilbert W. Butler,* of Martinsville, for appellants.

*Homer Elliott,* of Martinsville, and *Otis E. Gully,* of Danville, for Appellees.

HAMILTON, J.—This is an appeal from a decree and judgment of the Morgan Circuit Court, to which the cause was venued from the Hendricks Circuit Court, enjoining appellants from interfering with the use by appellees of an easement for a pass, or road, way from appellees' land over and across appellants' land to a public highway.

There was a trial to the court, the facts were found specially, and conclusions of law were stated thereon, and excepted to by appellants. A motion for a new trial was duly filed and overruled and final judgment rendered upon the conclusions of law.

The errors assigned in this court are: (1) That the court erred in overruling appellants' motion for a new trial; and (2) the court erred in each of its conclusions of law.

Appellants have not seen fit to include the evidence in the record brought to this court, and, since the reasons assigned as grounds for a new trial require a consideration and review of the evidence, which is not before us, no question is presented by the first assignment of error.

By excepting to each conclusion of law, appellants admit, for the purposes of such exceptions, that the facts, upon which such conclusions of law are based, have been fully and correctly found in the special finding of facts. Works Pr., vol. 2, § 1609; *Byrum* v. *Wise, Receiver* (1940), 216 Ind. 678, 683, 25 N. E. (2d) 992.

The court found the facts to be as follows:

"1. On and prior to December 4, 1939, Brooks T. Hadley was the owner of the following described real estate in Hendricks County, Indiana, namely:

"Tract 1. A part of the West half of the Southeast quarter of Section 3, Township 15 North, Range 1 West, and a part of the West half of the

Northeast quarter of Section 10, Township 15 North Range 1 West, bounded and described as follows, to-wit: From the Northwest corner of the Northwest quarter of the Northeast quarter of said Section 10, run South 112.2 feet to the center line of State Road No. 36: thence run South 87 degrees East along said center line 556.48 feet; thence run South 80 degrees and 31 minutes East along said center line 128 feet, and to the beginning point of this description.

"From said beginning point thence run North a distance of 280.7 feet: thence West a distance of 126 feet: thence run North a distance of 132.8 feet: thence run East a distance of 60 feet: thence run North 7 degrees East, a distance of 192 feet: thence run North 83½ degrees East, a distance of 354.5 feet: thence run South 2 degrees East, a distance of 824 feet and to the center line of State Road No. 36: thence run North 48 degrees and 46 minutes West, on and along the center line of said State Road a distance of 326 feet: thence run North, 80 degrees and 30 minutes West, on and along said center line a distance of 59 feet and to the place of beginning, all in Hendricks County, Indiana, containing in above described tract 5.90 acres, more or less.

"Tract 2. A part of the West half of the Southeast quarter of Section 3, Township 15 North of Range 1 West, and a part of the West half of the Northeast quarter of Section 10, Township 15 North, Range 1 West, bounded and described as follows, to-wit:

"From the Northwest corner of the Northwest quarter of the Northeast quarter of said Section 10: run South 112.2 feet to the center line of State Road No. 36: thence run South 87 degrees East along said center line 556.48 feet: thence run South 80 degrees and 31 minutes East along the center line of said State Road No. 36: 128 feet: thence run North a distance of 280.7 feet to a point: thence West a distance of 126 feet to a point: thence South 257.7 feet to the place of beginning. Estimated to contain 1.10 acres, more or less.

"Tract No. 1 is hereinafter referred to as the

Krueger land and Tract No. 2 is referred to as the Beecham land.

"The said Brooks T. Hadley and his grantor, immediate and remote, had been the owners of both of the above described tracts in continuous succession since 1876. During the period of from 1876 until December 4, 1939, the said two tracts were joined together in one tract of land consisting of seven (7) acres, more or less.

"2. The said seven-acre tract of land was bounded on the north and west by the lands of strangers: on the south by a public highway: on the east for a distance of 380 feet running north from the southeast corner of said tract by a county road which at that point intersects U. S. Road No. 36: and by the lands of a stranger from the north end of county road to the northeast corner of said tract.

"The said county road was and is a *cul de sac* and comes to a dead end at a point 380 feet from the southeast corner of said seven-acre tract of land.

"The highway running along the south side of said tract was improved with concrete paving about 1927 or 1928, and is now and ever since then has been known as U. S. Road No. 36, and maintained as such U. S. Highway.

"The right of way of said U. S. Road No. 36 is 100 feet in width, and the pavement is in approximately the center of the right of way. Measurements as to elevation at different points mentioned herein refer to the elevation above the highway pavement.

"3. The Beecham land is a rectangular tract of land carved out of the southwest corner of the entire seven-acre tract, and its dimensions are as follows: From the southwest corner of the northwest corner is 257.7 feet: across the north end the distance is 126 feet: from the northeast corner to the southeast corner the distance is 280.7 feet: and from the southeast corner to the southwest corner it is 128 feet.

"4. During all the time that said Brooks T. Hadley owned the entire tract of seven acres and running back from said time to 1876 there was a dwel-

ling house on said Beecham land, which was occupied as a family home by the owners of the Krueger and Beecham lands, or their tenants: there was no other dwelling house on said seven acres tract during any part of said period, and prior to 1940. There was also a barn on what is now the Krueger land, which was located about 150 feet northeast of said dwelling house.

"5. For a period of 50 years and more prior to December, 1939, the owners of the combined Krueger and Beecham lands, and persons having occasion to visit them for any purpose by means of vehicular traffic *affected* their ingress to said barn and house by traveling over the said county road from its junction point with what is now the U. S. Road No. 36, northward to the end of said county road and thence in a westerly direction across said seven acre tract to the barn or house, depending upon where they desired to stop. Egress was *affected* by traveling over the same route. The route described was used by visitors, tradesmen having merchandise such as coal or feed to deliver, for funeral parties, physicians and others having occasion to reach said barn or dwelling by vehicle travel.

"6. At some time prior to the construction and improvement of U. S. Road No. 36, one person drove a wagon from the then existing highway up along or near the east boundary line dividing the Krueger and Beecham lands, to the house or barn, but since the construction and improvement of said highway in 1927 or 1928, there has been no vehicular travel to said house or barn leading off from U. S. Road No. 36 where it abuts on the Beecham land, but all such traffic has been over the route described in Finding No. 5.

"7. Since the construction and improvement of U. S. Road No. 36, in 1927 or 1928, the physical situation with respect to the highway and the premises abutting it on the north has been and now is substantially as follows:

"The right of way of the highway is 100 feet in width: the pavement is about 20 feet wide, and is located in the approximate center of the right of way: the highway slopes downward to the west

and is 1.8 feet lower at the southwest corner of the Beecham land than at the southeast corner of said tract; there is practically a level berm of about 15 feet in width immediately to the north of the pavement, and along the north side of the berm there is a concrete ditch or side drain. Just north of the concrete drain there is a slope extending upward from the drain to near the north line of the right of way. The elevations (from the level of the pavement) are as follows:

"At the southeast corner of the Beecham land, the top of the slope is 11.6 feet above the pavement. At a point about the center of the south side of the Beecham land, the top of the slope is 13.1 feet above the pavement: and at the southwest corner of the Beecham land, the top of the slope is 7.8 feet above the pavement.

"8. The natural slope of the ground in the Beecham land from the north side of the right of way of the highway to the North is upward, and at the point where the dwelling house is situated on said Beecham land, the elevation above the highway pavement is 39.5 feet.

"9. The dwelling house on the Beecham land is 32 feet from the north line of said tract, 27 feet from the east line thereof, is 36 feet wide at its widest point, and the west side of the house is 63 feet from the west line of said Beecham land. The distance from the center of the pavement to the house is 220 feet. The dwelling house rests on a brick foundation with basement underneath, in which there is a coal room and a furnace room. On the front, or south side of said house, the basement wall reaches but a short distance above the surface of the ground but at the northwest corner of the house, and, owing to the natural slope of the ground, the basement wall reaches some five or six feet, or more, above the ground level. The coal room is on the east side of the basement and coal is thrown into the basement through an opening on the east side of the house. From the house, the ground slopes to the north and the west, as well as to the south. The west boundary line of the Beecham land runs along the side of the slope to the west, but East of the foot of the slope. The

slope to the west contains a growth of bushes and small trees.

"From the north side of the house, there is a slope toward the north down into a ravine which runs westward and joins with another ravine running north and south.

"10. There is a private roadway on the land adjoining the Beecham land on the west running from the U. S. Road No. 36, Northward, but it is wholly on the land of a stranger and cannot be reached from the Beecham land without traveling over the land of the stranger for a distance of from 12 to 18 feet, depending upon the point selected.

"In December, 1939, the defendants, August J. Krueger, Jr. and Ora D. Krueger, acquired title to Tract No. 1 by virtue of a deed executed to them by the legal guardian of Brooks T. Hadley, an infirm person: said deed was made pursuant to a guardian's sale of land, was submitted to and approved by the Hendricks Circuit Court, and contained all of the usual provisions of an ordinary guardian's deed, and they now own and hold said Tract No. 1 by virtue of said conveyance.

"On July 3, 1943, the plaintiff, Marvin Beecham, acquired title to Tract No. 2 by virtue of a deed executed by the legal guardian of said Brooks T. Hadley, which deed was made pursuant to a guardian's sale of land, and was submitted to and approved by the Hendricks Circuit Court and contained all of the usual provisions of an ordinary guardian's deed. The purchase price of said land was $1,900.00 and this is the only evidence of its value.

"Later, but before the beginning of this action, the said Marvin Beecham, his wife, the plaintiff Esta Beecham, joining therein conveyed said land to a third person for the purpose of having the same reconveyed to them as tenants by the entirety, and such third person did reconvey said lands to them and they now own and hold said Tract No. 2 by virtue of such conveyances. The barn hereinbefore referred to was located on Tract No. 1, acquired by defendants.

"11. At the time defendants acquired Tract No. 1 there was no roadway or driveway into either Tract No. 1 or Tract No. 2 leading off from U. S. Road No. 36. There was at such time a visible and obvious and apparent roadway leading from the north end of the county road heretofore mentioned, westward and across the lands of defendants (Tract No. 1) : said roadway had been surfaced with cinders and was readily apparent from its said beginning to the barn to the dwelling house on Tract No. 2. The relative surface of the two tracts of land at this point is practically level. At the time of the purchase of Tract No. 1 by defendants they knew of the existence of the said roadway. Since acquiring their said lands, the defendants have surfaced said roadway for a part of the distance through their said land with crushed stone.

"12. No entrance can be made into plaintiffs' land (Tract No. 2) from U. S. Road No. 36 without cutting and otherwise disturbing the right of way of said highway.

"13. At the time the road, in front of all this real estate was reconstructed and became United States Highway No. 36 there was no provision made for ingress and egress to any of the land except the one then in general use over the county road to the top of the hill. This fact was visible to defendants at the time they purchased the land now owned by them.

"In order to construct an entrance from Highway No. 36, to reach the residence on the Beecham land it will first be necessary to secure the consent and the cooperation of the State Highway Commission.

"It would then be necessary to excavate, on the Beecham land, down to the level of the highway or construct a grade across the north side of the highway right of way. To enter the Beecham land at the point of the lowest elevation above the highway would be at or near the southwest corner of the Beecham land. At that point, the west side of such driveway would need to be 12 feet east of the west line of the Beecham land. Such driveway would

need to be constructed 12 feet wide, and it would have to be constructed on the side of a steep slope existing at right angle with such a passway and on a grade of 10½%. It would have to circle the northwest corner of the residence on said land and upon reaching the north side of said residence it would have to assume a grade of 33½% in order to reach the level part of the land immediately east . of and adjacent to said residence, and at a point which has always been the destination of all vehicular traffic, for all purposes in connection with the use of this residence. As this driveway would circle around the northwest corner of this residence, it would have to be increased to a width of 20 feet. Such a highway could not be constructed without leaving a high bank on the east side thereof, and after it curved around the northwest corner of the house, which would have to be protected by a concrete wall varying in height from three to eight feet. This passway would have to be paved with gravel or stone.

"A passway of this kind, as it would have to be constructed on this land, would be impracticable, dangerous to use for ordinary traffic and impossible to use for heavy traffic, and it would be unreasonable to impose such an unusable passway upon plaintiffs' land.

"The cost of constructing a roadway as described in this finding would be about $936.00, which does not include anything for removing trees or dirt from the excavation.

"14. There is no practical means of gaining ingress or egress to or from plaintiffs' house on Tract No. 2 to or from U. S. Road No. 36.

"15. All of the facts with respect to the surface of ground, the use of the passway over defendants' land, the situation with respect to U. S. Road No. 36, and the lack of any way over plaintiffs' land to an outlet on U. S. Road No. 36, were apparent and obvious to both plaintiffs and defendants prior to and at the time of the purchase of their respective tracts of land.

"16. In order for plaintiffs to make use of their said lands and to obtain fair enjoyment from the

use of them, it is reasonably necessary that they and those persons having occasions to visit their premises be permitted to use the passway across the land of the defendants, as the same now exists, or did exist in December, 1939, and prior thereto.

"17. Prior to the beginning of this action the defendants closed the passway over their lands by locking the gate at the east end thereof and by placing barriers containing 'No Trespassing' signs across it, and by forbidding plaintiffs to use said passway and by threatening plaintiffs with prosecution if they did not cease the use of such passway, and will, unless enjoined, exclude plaintiffs from the use of said roadway."

Upon these facts the court stated the following conclusions of law, to wit:

"1. The law is with the plaintiffs.
"2. The plaintiffs are entitled to a perpetual injunction against defendants enjoining them from obstructing the passway mentioned and described in the foregoing Findings, or from interfering with the use of said passway over and across the defendants' said lands by plaintiffs or by other persons desiring to use such passway to enter or leave plaintiffs' said premises."

The only question presented for our consideration is that of the sufficiency of the special finding of facts to support the conclusions of law.

Appellants' first objection is based upon the proposition that the facts found are insufficient to create and establish an easement by prescription, or adverse possession, and cites in support of such contention § 56-801, Burns' 1943 Replacement, § 14772, Baldwin's 1934; *Gascho* v. *Lennert* (1912), 176 Ind. 677, 97 N. E. 6. In answer to this contention, appellees state in their brief that they "do not contend that they have any right by prescription. Appellees contend for a way by necessity, an implied grant. Section 56-801, Burns' 1943 Re-

placement (cited by Appellants), does not enter into the case." We agree with appellees' statement that the question as to an easement by prescription or adverse user is not involved in this appeal.

Appellants contend that the special finding of facts is insufficient to support the conclusions of law because the court failed to find the following facts: "a. the location by metes and bounds of the driveway in question; b. the location and elevation of appellants' house; c. the percent of grade of the county highway (off of which the driveway extends) so that comparison can be made with the percent of grade from U. S. Highway No. 36 to appellees' house . . . ; d. the fair and reasonable market value of appellees' lands and improvements; e. the fair and reasonable cost of constructing a driveway from U. S. Highway No. 36 to appellees' house; f. facts amounting to reasonable necessity, requiring the use of appellants' lands by appellees."

In considering the above objections we must bear in mind the firmly settled rule that a special finding of facts should contain only the ultimate facts and not the evidentiary facts. It is not proper that a special finding should contain any of the evidence, but only the ultimate facts established by the evidence. Works Pr., vol. 2, § 1593. Applying this standard to the special finding of facts in the instant case, we find that in special finding No. 5 the court found that for a period of 50 years the owners of the combined tracts Nos. 1 and 2 and all other persons used the roadway described in said finding as the sole means of ingress and egress from U. S. Highway No. 36 to the dwelling house located on tract No. 2, and in special finding No. 11, *supra*, the court expressly found that at the time appellants acquired title to their real estate "There was at such time a visible and obvious and ap-

parent roadway leading from the north end of the county road heretofore mentioned, westward and across the lands of defendants (Tract No. 1) : said roadway had been surfaced with cinders and was readily apparent from its said beginning to the barn to the dwelling house on Tract No. 2. . . . At the time of the purchase of Tract No. 1 by defendants they knew of the existence of the said roadway." In view of these findings of facts and the law applicable thereto as established by the authorities hereinafter cited, we hold that it was not necessary for the court to describe by metes and bounds said "visible," "obvious," "apparent" roadway which had been surfaced with cinders and had been used for a period of 50 years and was known to appellants. *Kaiser* v. *Somers* (1923), 80 Ind. App. 89 on 95, 138 N. E. 20.

We hold further that the matters referred to in objections "b" and "c," *supra,* are matters of evidence and are fully covered by the ultimate facts found in special findings Nos. 7, 8, 9, 12, and 13, *supra.* We also believe that the matters mentioned in objection "d" are sufficiently covered by the facts found in special finding No. 10, *supra,* and that objection "e" is sufficiently covered by the facts stated in special finding No. 13, *supra.* With reference to objection "f" we hold that special finding No. 16, *supra,* is the statement of an ultimate fact and that it was not necessary to set forth in detail the evidence upon which the ultimate fact of "reasonable necessity" was based. *Shandy* v. *Bell* (1934), 207 Ind. 215 on 223, 189 N. E. 627. The primary facts found in the other special findings do not contradict the ultimate fact stated in special finding No. 16.

In determining whether or not the conclusions of law are supported by the special finding of facts we believe

that the law applicable thereto is clearly, fully, ▮▮ and correctly stated by our Supreme Court in the case of *John Hancock, etc., Ins. Co.* v. *Patterson* (1885), 103 Ind. 582, 2 N. E. 188, 53 Am. R. 550. We quote with approval and at length the following from pages 586 to 590 of 103 Ind.

"Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made. . . .

"Where such arrangement is visible, and apparently designed to be permanent, and is valuable and reasonably necessary to the enjoyment of the parcel granted, the parties will be presumed to have contracted with reference to the condition of the property at the time of the grant, 'and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts.' . . .

"*The degree of necessity is to be determined rather by the permanency, apparent purpose, and adaptability of the disposition made by the owner during the unity of title, than by considering whether a possible use can be made of the parcel granted, after a discontinuance of the right formerly exercised over the other. Dunklee* v. *Wilton R. R. Co.,* 24 N. H. 489; *French* v. *Carhart,* 1 N. Y. 96.

"Whether the continuance of the previous use is indispensable to the future enjoyment of the estate

granted in the condition it was in when severed, the practicability and effect of new adjustments, and the expense involved in making them, while not conclusive, may properly be taken into account, not for the purpose of determining the necessity of a continuance of the use, but to illustrate the degree of probability that the purchaser, as a reasonable man, took the conveyance with the expectation that the existing use would be continued. The particular facts and the situation and disposition of the estate in each case must control.

"The reasonable application of the doctrine, as we deduce it from the authorities, however, leads to the general conclusion that if the service imposed on one, during the unity of possession of two parcels of land, was of a character looking to permanency, and the discontinuance of such service would obviously involve an actual and substantial rearrangement of that part of the estate in whose favor the service was imposed, to the end that it might be as comfortably enjoyed as before, then such a degree of reasonable necessity would seem to exist as would raise an implication that the use was to be continued.

"If, on the other hand, the arrangement was of an indifferent or probably temporary character, having no apparent adaptability to use for the several parts in the situation in which they are, and the continuance of which, while obviously detrimental to the one, would be of no peculiar value beyond mere convenience to the other, then no grant would be implied." (Our italics.)

The above rule has been reaffirmed by the Supreme Court in the cases of *Ellis* v. *Bassett* (1891), 128 Ind. 118, 27 N. E. 344, 25 Am. St. 421, and *State ex rel. McNutt* v. *Orcutt* (1937), 211 Ind. 523, 526, 7 N. E. (2d) 779, and must be considered as the established law in Indiana governing ways of necessity by implied grant.

Appellants contend that the appellees are not entitled to a roadway by necessity over and across appel-

lants' real estate for the reason that the special finding of facts establishes the visible, apparent, and obvious roadway entirely upon appellants' real estate and therefore it cannot be held to be appurtenant to appellees' real estate.

We hold that the correct rule applicable to the facts disclosed by the special finding in the instant case is stated in American Jurisprudence, vol. 17, p. 931, under "Easements," as follows:

> "Some authorities hold that a way cannot be appurtenant to a close at which it neither begins nor ends and that one terminus must be on the land or tenement of the person claiming it. The more liberal view, however, is that notwithstanding neither terminus of a way is upon the close to which it is claimed to be appurtenant, the way will be so regarded, if such appears to have been the intention of the parties. The weight of authority supports the rule that an easement may be appurtenant to land even though the servient tenement is not adjacent to the dominant."

The special findings of facts are sufficient as against said objection. *John Hancock, etc.* v. *Patterson, supra; Ellis* v. *Bassett, supra; State ex rel. McNutt* v. *Orcutt, supra; Kaiser* v. *Somers, supra.*

Finally, appellants insist that appellees are not entitled to a way of necessity over appellants' real estate for the reason that the real estate of appellees abuts upon U. S. Highway No. 36, and therefore there is no basis for claiming a way of reasonable necessity over appellants' lands. Appellants' contention would be well taken if the rule of strict, or absolute, necessity prevailed in Indiana. However, this is not correct as we have heretofore shown. *John Hancock, etc.* v. *Patterson, supra,* on p. 589; *Pettingill* v. *Porter,* 8 Allen (Mass.) 1, 90 Mass. 1, 85 Am. Dec. 671. Therefore, we hold that under the law as declared and estab-

lished in the cases heretofore cited in this opinion, the special finding of facts is sufficient to establish a way of reasonable necessity by implied grant over appellants' lands and that the conclusions of law as rendered by the court upon the special finding of facts are correct.

We fail to find any reversible error in the record. Judgment affirmed.

NOTE.—Reported in 61 N. E. (2d) 65.