HUFF ET AL. *v.* INDIANA STATE HIGHWAY COMMISSION
ET AL.

[No. 29,514. Filed April 11, 1958. Rehearing denied
May 26, 1958.]

*Schlosser, Young & Schlosser, Chalmer Schlosser, Jr., Symmes, Fleming & Symmes* and *Charles W. Symmes,* all of Indianapolis, for appellants.

*Edwin K. Steers,* Attorney General, *Richard G. Stewart, Frank X. Haupt* and *Jack C. Daw,* Deputy Attorneys General, for appellees.

EMMERT, C. J.—This is an appeal from a judgment by the trial court denying relief to the appellants in an action, under ch. 365 of the 1947 Acts, §63-3001 to §63-3030, Burns' 1951 Replacement (as amended), to review a determination and order of the State Highway Department of Indiana, which denied an application by appellants to have access to State Road No. 100 at the intersection of said road with 56th Street in the City of Indianapolis for filling station purposes. The assignment of errors has many specifications, but only the errors presented by the argument section of appellants' original brief, as required by Rule 2-17, will be considered, since failure to comply with the Rule waives any error. Rule 2-17, subsection f.

On March 26, 1956, appellants filed a petition with the Department to open a driveway into State Road No. 100 which was on the east side of their real estate, for a filling station. On May 2nd the Department denied the petition. On June 4th appellants filed a petition to reconsider the first denial of the petition, upon which a hearing was had at which appellants appeared in person and were represented by counsel. This hearing fully complied with §63-3024, Burns' 1951 Replace-

ment.[1] The hearing before the Department was had June 4, 1956, and the matter then taken under advisement. On July 3rd, by a resolution duly adopted, the application for a permit was denied.

On November 2, 1955, by resolution duly adopted, the State Highway Department of Indiana found State Highway No. 100 was heavily traveled and designed for through traffic; that it served as a by-pass highway to the east, northeast and north of the City of Indianapolis; that it was part of a proposed "Circum-Urban" or belt highway to extend completely around Indianapolis and connect all the State and United States highway routes entering the Indianapolis area; that it was part of a route of the national system of interstate highways; that a part of said highway on Shadeland Avenue, from a junction of U. S. Highway No. 40 to the intersection of State Highway 67, had been constructed as a four-lane highway with two separate roadways; and that the traffic conditions on said highway then and in the future justified the designation and establishment of a portion of this highway for approximately 9 miles, from a distance of 1,126 feet north of the intersection of said highway No. 100 with United States Highway No. 40 northward to the intersection of said highway with 82nd Street near the east

1. "The provisions of this act [§§63-3001—63-3030] shall not apply to the proceedings for the issuance of licenses or permits on application but the proceeding for such license or permit by such proceedings shall be under the provisions of the law relating to the particular agency, however, whenever an application for a license or permit is denied under the provisions of the law relating to a particular agency such applicant shall be entitled to have a hearing before the ultimate authority of such agency on such denial upon filing within fifteen [15] days after such refusal a written application for such hearing. At such hearing said applicant shall be the moving party and have the burden of proof. Such hearing shall be conducted in accordance with the provisions of this act for hearing before an agency." Section 63-3024, Burns' 1951 Replacement.

edge of Castleton in Marion County, as a limited access facility pursuant to ch. 245 of the 1945 Acts (as amended), §§36-3101 to 36-3111, Burns' 1949 Replacement. Upon such finding the resolution declared and constituted said State Highway No. 100 a limited access facility "and that access to and egress from said State Highway No. 100, between said points, shall be and are hereby limited to the designated intersections at the following approximate locations . . . ." No access was provided for the place in controversy.

By §1 of the Limited Access Facility Highways Act, the Legislature declared the Act was necessary "for the immediate preservation of the public peace, health, and safety and for the promotion of the general welfare." Section 36-3101, Burns' 1949 Replacement. Various other sections material to the issues involved follow:

> "For the purposes of this act, a 'limited access facility' is defined as a highway or street especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement or only a limited right or easement . . . by reason of the fact that their property abuts upon such limited access facility or for any other reason. . . ." Section 36-3102, Burns' 1949 Replacement.

> "The highway authorities of the state, counties, cities, and towns, acting alone or in cooperation with each other or with any federal, state, or local agency of any other state having authority to participate in the construction and maintenance of highways, are hereby authorized to plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide limited access facilities for public use whenever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities . . . ." Section 36-3103, Burns' 1949 Replacement.

> "The state highway commission of Indiana [now the state highway department of Indiana,

§36-173b, Burns' 1949 Replacement (Supp.)] and the proper authorities of any county, city, or town having charge of any highway or street affected by this act, are authorized to design any limited access facility and to regulate, restrict or prohibit access as to best serve the traffic for which such facility is intended. . . . No person shall have any right of ingress or egress to, from, or across limited access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time by rules and regulations adopted and promulgated as by law provided." Section 36-3104, Burns' 1949 Replacement.

"For the purposes of this act, such authorities of the state, counties, cities, or towns, may acquire private or public property and property rights for limited access facilities and service roads, including rights of access, air, view, and light, by gift, devise, purchase or condemnation in the same manner as is now or hereafter may be provided by law to acquire such property or property rights for the laying out, widening or improvement of highways and streets within their respective jurisdictions. . . . The rights of all property owners who may claim damages, as provided by the Constitution of the state of Indiana, are preserved herein and may be enforced under the present laws of the state of Indiana." Section 36-3105, Burns' 1949 Replacement.

"The highway authorities of the state, county, city, or town, may designate and establish limited access highways as new and additional facilities or may designate and establish an existing street or highway as included within a limited access facility. . . . No city or town street, county or state highway, or other public way shall be opened into or connected with any such limited access facility without the consent and previous approval of the proper authorities of the state, county, city, or town, having jurisdiction over such limited access facility. Such consent and approval shall be given only if the public interest shall be served thereby." Section 36-3107, Burns' 1949 Replacement.

It appears from the record that the real estate in controversy, which was 175 feet square at the intersection of State Highway No. 100 and 56th Street, had been zoned for a filling station by the proper local authorities. Appellants insist that nothing was done to accomplish the purpose of the limited access resolution except signs were ordered posted in compliance with the resolution. We would not be warranted in giving such a narrow construction to the Act that the Department would be required to extinguish all easements of ingress and egress forthwith, and proceed at once with the construction of the highway to bring it to a completion as planned. Unless highways are planned for the future, millions of dollars will be wasted. They can only be constructed as money becomes available. Appellants are in error in asserting in substance that the action of the Department was void because the highway as planned for limited access was not under construction.

It is not contended that as yet the Highway Commission has in any way prevented the appellants from exercising their ordinary right of ingress and egress to State Highway No. 100. The owners' right of ingress and egress to a public highway is a property right which may not be taken from him without compensation. *Ross* v. *Thompson* (1881), 78 Ind. 90; *Burton* v. *Sparks* (1941), 109 Ind. App. 531, 36 N. E. 2d 962.

But a refusal to grant a permit for a right of ingress and egress for a new filling station is quite another matter. The effect of appellants' contentions if sustained would be to force the Department to grant the permit, and then seek to extinguish it by a condemnation proceedings under the eminent

domain act of 1905, as amended, §3-1701, *et seq.,* Burns' 1946 Replacement. This would permit the appellants to augment the damages that would have to be paid by the State in every case where it sought to establish a limited access facility highway. It also overlooks the right of the State under the police power to regulate the nature of an easement for ingress and egress. We hardly think it can be held that anyone wherever his land may be situated has a constitutional right to a way of ingress and egress for a public filling station along a state highway which has been declared a limited access facility. If such unlimited constitutional right did exist the land along the right of way could become so overloaded with filling stations or other business places that the cost of extinguishing the easements would be prohibitive. In view of the clear provisions of §36-3104, Burns' 1949 Replacement, *supra,* we feel that an action to review the administrative determination of the Department is not available to try out the issues that should be involved in a proceeding in eminent domain.

Appellants rely upon the decision of this court in *Thomas* v. *Lauer* (1949), 227 Ind. 432, 86 N. E. 2d 71, but in that case the State was proceeding without authority of law to attempt to destroy the possessory rights of a tenant in his lease under which he had established a going business. The case held an injunction was proper, and the State did have to proceed to condemn the tenant's interest in the land. In the appeal at bar there is no existing business by a tenant in possession with an existing public right of ingress and egress to the highway for business uses. As to whether or not the State in the exercise of its police power is required to recognize any right at all where access to a filling station is involved, see Town of

*Homecroft* v. *Macbeth* (1958), 238 Ind. 57, 148 N. E. 2d 563. Section 11 of the eminent domain act of 1905 is available to the appellants, and provides a complete and adequate remedy if they are entitled to any damages by reason of the fact that State Highway No. 100 has been made a limited access facility highway.[2]

In view of our holding that the appellants' remedy was not by an action to review the administrative determination and order of the Department, it becomes unnecessary to determine any alleged errors concerning rulings on evidence.

Judgment affirmed.

Achor and Arterburn, JJ., concur.

Bobbitt and Landis, JJ., concur in the result.

NOTE.—Reported in 149 N. E. 2d 299.

---

2. "Any person having an interest in any land which has heretofore been or may hereafter be taken for any public use without having first been appropriated under this or any prior law may proceed to have his damages assessed under this act, substantially in the manner herein provided." Section 3-1711, Burns' 1946 Replacement.