STATE of Indiana, Appellant
(Plaintiff Below),

v.

INNKEEPERS OF NEW CASTLE, INC.,
Appellee (Defendant Below).

No. 779S196.

Supreme Court of Indiana.

July 25, 1979.

**460**

Theodore L. Sendak, Atty. Gen., Indianapolis, for appellant.

Robert J. Maley, Harrington, Maley, Gardner & Sayre, Richmond, Jim C. Cordes, Cordes, Baker & Bodwell, Connersville, for appellee.

ON PETITION TO TRANSFER

PRENTICE, Justice.

This case is before us upon the petition of the defendant, appellee, Innkeepers of New Castle, Inc. (Innkeepers) to transfer from the Court of Appeals, First District, that Court having reversed the judgment of the trial court entered upon the verdict, being an award of damages against the appellant, State of Indiana (State) for the appropriation of a portion of Innkeepers' land and elimination of its existing access to State Road No. 3, in Fayette County.

The sole issue presented by the State, on appeal, was the exclusion of purportedly available evidence that Innkeepers had an easement over adjoining land, which easement mitigated against the loss of access to Road No. 3 occasioned by the appropriation. The Court of Appeals reversed the trial court and ordered a new trial, by opinion published at 375 N.E.2d 1129; but in so doing, it failed to give a statement upon an issue presented by Innkeepers. A resolution of that issue, contrary to Innkeepers' position, was essential to sustain said Court's decision and contravened a ruling precedent of this Court, to-wit: *State v. Stabb*, (1948) 226 Ind. 319, 79 N.E.2d 392. In that case, it was held that knowledge by an owner of a proposed highway which, if built, would result in the taking of his land, imposed no duty upon the owner to anticipate a taking and to restrain his use of the land in such manner as to mitigate his damages in the event of appropriation.

Because of such contravention and other contraventions that we need not here relate, transfer is now granted, and the decision and opinion of the Court of Appeals is hereby vacated. Innkeepers asserts that there are other errors in the opinion of the Court of Appeals, in that it took into consideration various facts not in evidence and not contained in any offer to prove.[1] How-

1. "Innkeeper has raised numerous procedural arguments concerning the State's presentation of evidence, offers to prove, and sufficiency of its motion to correct errors. While we agree that the State's presentation of its case at trial left much to be desired, we feel that it preserved a record that is sufficient to allow appellate review. Despite the fact that the offers to prove made on behalf of the State were rambling and somewhat disorganized, it is clear

ever, because the existence of such facts, if proven, nevertheless would not change the result reached herein, we have elected not to treat each such challenge of Innkeepers. Rather, we will address the case upon its merits, upon the factual situation as determined by the Court of Appeals.

█ There is another matter reflected by the record of this case that bears mention. Two extensions of time for filing the record of proceedings with the Court of Appeals were granted upon the strength of affidavits filed by the State. The certifications to the transcript indicate that the statements related as facts by such affidavit were false. If so, the appeal should have been dismissed by the Court of Appeals, as the timely filing of the record is jurisdictional, and extensions of time granted in error are meaningless and cannot confer jurisdiction. *State ex rel. Buis v. Hendricks Superior Court,* (1964) 246 Ind. 1, 201 N.E.2d 697. From the information furnished, at our request, at oral arguments upon the petition to transfer and because the Deputy Attorney General who petitioned for the time extension was not at that time associated with the appeal and was not then available, we have been unable to determine, with certainty, the cause of the apparently irreconcilable inconsistencies.

Only because our preliminary review of the appeal revealed error of law in the decision of the Court of Appeals requiring that decision to be vacated and the judgment of the trial court to be affirmed, have we proceeded to dispose of this case upon its merits, thereby rendering the jurisdictional issue moot. Nevertheless, evidence of an attempted fraud upon the Court is such that it cannot be ignored or lightly regarded. Accordingly, this aspect of the case will be referred to our Disciplinary Commission for a determination by it of whether or not probable cause exists to believe that there has been professional misconduct warranting disciplinary action.

The State filed eminent domain proceedings against Andrew and Lucille Tabor in December, 1969, to appropriate a certain strip of land adjacent to and eliminating access right to Indiana State Road No. 3, near New Castle. In September, 1971, State moved to join Innkeepers as a party defendant, which motion was erroneously granted, but such error is not material to this appeal.

Separate trials for Innkeepers and for the Tabors were granted, and in December, 1976, a jury trial was held to determine the damages to be awarded to Innkeepers. A verdict for damages was rendered, and the court entered judgment thereon. The State's subsequent motion to correct errors was denied, and this appeal followed. The error assigned is the ruling of the trial court in excluding evidence that the Tabors were the grantors from whom Innkeepers derived their title to subject real estate and that Andrew Tabor was a stockholder and officer of Innkeepers, a corporation.

On July 8, 1966, subject real estate and contiguous real estate, a total area of 33.96 acres, was owned by Andrew L. Tabor and Lucille Tabor, husband and wife. The entire 33.96 acre parcel was bounded on the west by State Road No. 3 (a public roadway), on the south by County Road No. 300 South (a public roadway) and on the north and east by lands of other owners. Subject real estate was contiguous to State Road No. 3 but not to County Road No. 300 South. On that date, Andrew Tabor made a written application, in the name of "Holiday Inn," to the State Highway Commission for a permit to construct a driveway entrance and approach from subject real estate onto State Road No. 3; and on November 29, 1966, he received a written response from the Commission's permit engineer. The response was not a denial but it did indicate that the application would be denied because it was proposed that State

---

from the record that both trial counsel and the trial court understood that the State wished to proceed under a theory of implied easement and that the trial court was determined to en-

force its ruling on Innkeeper's motion in limine to prevent the introduction of any evidence supporting that theory." From opinion of Court of Appeals, 375 N.E.2d 1129 at 1132.

Road No. 3 would, at some future time, become a limited access facility, limiting access to existing public roadways. The notification further noted that Tabor was apparently the owner of land lying between subject real estate and such an existing public roadway, i. e. County Road 300 South, and suggested the construction of a frontage road across such adjoining parcel, to provide access for the proposed motel site near said County Road.

In April of 1969, the plans of the Highway Commission had progressed to the point of purchasing rights-of-way for the limited access facility, and an offer was made to the Tabors to purchase a strip approximately fifty-five feet wide along the west boundary of the entire 33.96 acre parcel, which purchase, would have eliminated the aforesaid direct access of Tabors onto State Road No. 3. The offer was refused. On May 31, 1969, Andrew and Lucille Tabor conveyed subject real estate to Innkeepers, a corporation. Subject real estate was a 4.82 acre parcel. It had a frontage of three hundred fifty feet along State Road No. 3 and was bounded on the other three sides by lands retained by the Tabors.

On December 19, 1969, more than six months subsequent to the aforesaid conveyance by Tabors to Innkeepers, the State filed a complaint against Tabors to appropriate the aforesaid strip of land. The intended effect of such appropriation was to eliminate the existing direct access from said 33.96 acre parcel onto State Road No. 3. Because of the prior conveyance of Innkeepers, and their not being made a party defendant, however, the actual effect was to eliminate such access only from Tabors remaining land. Notwithstanding public notice of that conveyance, by recording on June 2, 1969, of the deed from Tabors to Innkeepers, the State did not negotiate with Innkeepers as required by the Condemnation Statutes, Ind. Code § 32-11-1-1, nor did it file suit against Innkeepers.

On September 13, 1971, the State moved to join Innkeepers as a party defendant, which motion was sustained *ex parte* upon the same date. Innkeepers subsequently filed objections to the joinder, which issue was briefed by the parties; and the court, thereafter, on March 23, 1973, overruled the objection. This appears to have been erroneous, inasmuch as the exclusive statutory procedure for appropriating the land of Innkeepers had not been followed and could not be followed in proceedings against Tabors. However, a determination of that issue is not necessary to the appeal before us. Ultimately, the matter progressed to a jury trial to determine Innkeepers' damages, which trial was separate from the trial as to Tabors' damages, essentially in the same manner as it would have, had the State proceeded correctly in the first instance.

Prior to commencement of Innkeepers' trial, Innkeepers filed a motion *in limine* which was granted without opposition and which prohibited the State from offering evidence, without prior approval of the court to be obtained in the absence of the jury, that would give rise to an inference that Innkeepers either had or could obtain a right-of-way across the land of Tabors onto State Road No. 3, via County Road No. 300 South.

The evidence adduced at the trial reflected that at the time of the appropriation by the State, Innkeepers' 4.82 acre parcel was improved with the Holiday Inn Motel and Restaurant, that its only access to State Road No. 3 had been eliminated by the appropriation, that its fair market value immediately prior to the appropriation was $812,629.00 and immediately thereafter, $11,118.00.

On cross examination, the State attempted to elicit testimony from one of Innkeepers' expert witnesses reflecting Innkeepers' origin of title and the 1966 application of Mr. Tabor, as a representative of Holiday Inn, for a highway access permit. The court excluded the testimony as irrelevant and violative of the limine order.

■ The State offered expert testimony as to Innkeepers' damages, but it was determined that the opinions of the expert witnesses would be based upon the assumption

that Innkeepers had a right-of-way across the remaining land of Tabors and access to State Road No. 3, via County Road No. 300 South, a fact not in evidence, either directly or inferentially. Accordingly, the proffered evidence was rejected. The State made various purported offers to prove, the procedural correctness of which is, at best doubtful. But it is clear that the State desired to proceed upon a theory that Innkeepers had an implied easement of necessity across the lands of Tabors, its grantors. The existence of such an easement obviously would bear materially upon the value of Innkeepers' residue. Hence, the crux of this case is whether or not, under the facts that the State offered to prove, and here accepted as true, Innkeepers obtained a right-of-way by necessity across the land of Tabors, incidental to the fee simple estate conveyed to it by the deed of May 31, 1969. If it did, the rejected evidence was relevant and improperly rejected. However, if it did not, the evidence was irrelevant and properly excluded, as having the potential of misleading the jury into believing either that the appropriation did not result in landlocking Innkeepers' residue of land or that there was some conspiracy between Innkeepers and Tabors to increase Innkeepers' apparent damages, or both.

The Court of Appeals holding was as follows:

"It is true, as a general rule, that in order to establish an implied easement by necessity, the necessity for the way or easement must be in existence (as) of the time of the conveyance. 25 Am.Jur. 2d Easements and Licenses, § 36. However, under the unique facts of this case, we feel that the purpose of this requirement has been satisfied. As stated above, the intention of the parties to create a way of necessity is to be implied in law from the fact that both grantor and grantee, at the time of the conveyance, knew or should have known that the conveyance would leave one parcel inaccessible. This may also be implied from the fact that there was a pre-existing and well-established right of way across the servient estate that is reasonably necessary to the use and enjoyment of the dominant estate. *Krueger v. Beecham* (1945), 116 Ind.App. 89, 61 N.E.2d 65." 375 N.E.2d 1129 at 1132.

Unquestionably, the existence of such an easement as was found by the Court of Appeals would have been a mitigating factor of substantial proportion; however, we do not agree that the evidence presumed could have been indicative of any reasonable necessity for such continued use, in view of the existing right of access directly onto State Road No. 3. The issue thus becomes: (1) can an easement implied by necessity arise from circumstances occurring subsequent to the conveyance; (2) can the State, or other entity having the right of eminent domain, preempt an estate or limit an owner in the unfettered use of his land, in advance of an appropriation, by giving notice of its intention to appropriate in the future. The answer to both questions is, "No."

The Court of Appeals, in finding that the excluded evidence should have been admitted, acknowledged that its decision was unique, saying:

" * * * Although it is true that the actual conveyance from the Tabors to Innkeeper did not landlock the Holiday Inn, the State's evidence tended to prove that (1) the Tabors had been the common owners of all the land; (2) Andrew Tabor was the major shareholder, a director, and a chief executive officer of Innkeeper; (3) Tabor, both individually and as agent for Innkeeper, knew that all access rights to State Road 3 were to be appropriated by the State in the near future; and (4) the conveyance from the Tabors to Innkeeper occurred only a very short time prior to the commencement of the proceedings to condemn the access rights to State Road 3. Under the facts of this case, the above evidence would have been sufficient to have allowed the jury to find an implied easement of necessity over the Tabors' other properties. In addition to this, the appraisers for the State attempted to testify that an access road across the Tabors' land was already in use,

which could have further strengthened the State's argument that an implied easement presently existed. *John Hancock Mutual Life Insurance Co. v. Patterson* (1885), 103 Ind. 582, 2 N.E. 188; *State ex rel. McNutt v. Orcutt, supra.*" 375 N.E.2d 1129 at 1132.

■ We have examined the cases above cited, and we found no suggestion among them, nor from our independent research, that an easement by necessity may arise from circumstances occurring subsequent to the conveyance. On the contrary, the easement arises simultaneously with the conveyance and because of the *circumstances then existing*, i. e. inaccessibility. At the time of the conveyance from Tabors to Innkeepers, there was an absolute right of access from the land conveyed directly onto State Road No. 3; hence there was no basis for an intention by the grantor and grantee that the conveyance carried with it an access easement across the remaining land of Tabors.

The Court of Appeals placed great reliance upon *Krueger v. Beecham*, (1945) 116 Ind.App. 89, 61 N.E.2d 65 and *State ex rel. McNutt v. Orcutt*, (1936) 211 Ind. 523, 199 N.E. 595, to support its conclusion that the use of a gravel roadway across the Tabors' land at the time of the conveyance to Innkeepers also gave rise to the inference of a right-of-way. Such reliance is misplaced, as those cases only hold that the existence and use of a roadway, visible and apparently permanent and reasonably necessary to the enjoyment of the parcel conveyed, would give rise to the presumption that the parties contracted with reference to the condition of the property at the time of the grant. It must be noted that there must be a reasonable necessity for the continued use of such a roadway for the enjoyment of the grant, and *such reasonable necessity must then be in existence.* In the case before us there was neither.

We are aware of no Indiana case where this principle has been questioned. It has been amply stated in other jurisdictions as follows:

"Such deed is to be construed in all its parts with reference to the actual, rightful state of the property conveyed at the time of the conveyance, unless some other time is expressly referred to.  *  *  *

"These cases are usually supported by the doctrine of implied grant, and may well stand upon that ground. They all support the position we have stated, but as to the incidents of real estate, deeds are to be construed with reference to the state of the property at the date of their execution; and this as well as to what is impliedly granted as to that which is expressed." *Dunklee v. The Wilkin Railroad Company*, (1852) 24 N.H. 489, 495, 496.

"If the way of necessity was not implied at the time of the grant in 1895, it cannot be established by subsequent necessity.  *  *  *  In other words, the necessity must be determined from the conditions as they existed at the time of the conveyance." *Hancock v. Henderson*, (1964) 236 Md. 98, 202 A.2d 599, 9 A.L. R.3d 592 at 598.

Also see *Othen v. Rosier*, (1950) 148 Tex. 485, 226 S.W.2d 622, 625; *Rogona v. Di Maggio*, (1964) 42 Misc.2d 1042, 249 N.Y.S.2d 705, 28 Corpus Juris Secundum, Easements, § 35 D.

■ In the *Krueger* case, although the parcel conveyed abutted upon the public roadway, there was no reasonable means of direct access by reason of an extreme difference in elevations. In the case before us, there was no such impediment. There was an abutting and readily accessible public highway to which there was an absolute right of access, notwithstanding an advisement of highly questionable propriety, two and one-half years earlier, that an application for a driveway entrance permit would be denied because of plans to make the highway a limited access facility at some future date. An owner's right of ingress and egress to a public highway may not be taken from him without compensation. *Huff et al. v. Indiana State Highway Commission*, (1958) 238 Ind. 280, 149 N.E.2d 299; *Ross v. Thompson*, (1881) 78 Ind. 90; *Bur-*

ton v. Sparks, (1941) 109 Ind.App. 531, 36 N.E.2d 962. It is immaterial, therefore, that at the time of the conveyance from Tabors to Innkeepers—or at the time of the appropriation there may have been a private roadway in use because such access was not reasonably necessary for the enjoyment of the estate expressly granted. The *Krueger* holding was premised upon *John Hancock Mutual Life Insurance Co. v. Patterson*, (1885) 103 Ind. 582, 2 N.E. 188, 53 Am.Rep. 550, and quoted from that case as follows:

> "If, on the other hand, the arrangement was of an indifferent or probably temporary character, having no apparent adaptability to use for the several parts in the situation in which they are, and the continuance of which, while obviously detrimental to the one, would be of no peculiar value beyond mere convenience to the other, then no grant would be implied." 103 Ind. at 590, 2 N.E. at 193.

■ It follows that at the time of the conveyance from Tabors to Innkeepers, there could have been no reasonable necessity for the right-of-way the State seeks to imply, unless it can be said that the mere knowledge that the State intends to effect an appropriation at some future date imposes the duty upon a potentially affected landowner to refrain from using such land in a manner that will or may increase the damages in the event such appropriation becomes a reality. The State has made no such contention directly, and we know of no case that suggests such a rule. Yet, such would be the effect of the decision of the Court of Appeals. The respective rights of the parties in a condemnation case are determined as of the time of the appropriation. *Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Smith*, (1912) 177 Ind. 524, 97 N.E. 164; *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67, 72. Any other holding would result in the taking of property under the power of eminent domain without compensation, contrary to Article I, § 21 of our state Constitution and the Fifth Amendment to the Constitution of the United States.

The record of this case discloses a hodge-podge of substantive and procedural errors on the part of the State. Initially it proposed to deny an application for an access permit, which it could not lawfully do. Subsequently, it filed its condemnation complaint against the wrong party, notwithstanding that Innkeepers' title was a matter of public record. Thereafter it insisted upon and succeeded, through an erroneous trial court ruling, in bringing Innkeepers into the action by amendment under Trial Rule 19, without ever having fulfilled the statutory pre-appropriation requirements. Thereafter, it resisted Innkeepers' motion for a separate trial upon the issue of its damages, a measure which if successful could only have been reversible error. Ultimately, it went to trial with its only appraisal evidence predicated upon facts not in evidence and upon a theory not sustainable.

■ There is nothing about the record of this case to indicate collusion between Tabor and Innkeepers to inflate the damages resulting from the appropriation. The mere existence of a shareholder's interest by Tabor in Innkeepers or his position as an officer thereof, if either was in fact the case, coupled with a conveyance by him and his wife of a portion of *their* real estate, without more, is no basis for concluding that the conveyance was of any estate other than that which it purported upon its face to convey. *To hold otherwise would subject every conveyance between parties related by business or personal interest to question and would render untold titles unmerchantable.*

If there was a right-of-way appurtenant to the estate conveyed to Innkeepers, it arose by express agreement of the parties, not by implication from the circumstances in evidence or offered in evidence. If this was in fact the case, it is regrettable. However, whether or not there was such an agreement was subject to pre-trial discovery, which the State did not elect to pursue. Had it established such an agreement, its existence would have been proper evidence as relevant to the damages done to

the residue. If no such agreement was disclosed, the State, at least, could have assessed the relative merits of providing an access road at its expense.

The trial court ruled properly in excluding the proffered evidence, which was irrelevant to the value of Innkeepers' land immediately prior to and immediately after the appropriation and could only have tended to mislead the jury into speculating upon the availability of access.

We find no error entitling the State to relief. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents, with opinion.

DeBRULER, Justice, dissenting.

An implied easement is to be read into a deed silent on the subject whenever such an easement is reasonably necessary for the fair enjoyment of the claiming tenement. *Shandy v. Bell*, (1934) 207 Ind. 215, 189 N.E. 627. *See: Pyramid Coal Corp. v. Pratt*, (1951) 229 Ind. 648, 99 N.E.2d 427; *Ritchey et al. v. Welsh*, (1897) 149 Ind. 214, 48 N.E. 1031. It is sufficient for an implied grant of an easement that a *reasonable* necessity for it be shown. It is not a requirement of the law that a *strict or absolute* necessity for it be shown. *The John Hancock Mutual Life Insurance Co. v. Patterson*, (1885) 103 Ind. 582, 2 N.E. 188. The rule of reasonable necessity produces the corollary rule most pertinent here that the fact that a claiming tenement itself abuts upon a public road and has legal access to such road does not foreclose the owner of such claiming tenement from showing that he is entitled to a way of necessity. *The John Hancock Mutual Life Insurance Co. v. Patterson, supra; Krueger v. Beecham*, (1945) 116 Ind.App. 89, 61 N.E.2d 65. The motion in limine sustained in the trial court and the in-trial objections were directed toward efforts by the State to show that Innkeepers Corporation acquired an implied easement across the adjoining lands of the Tabors to a nearby lesser road when the corporation acquired it from them by deed. The motion and objections were based upon the erroneous legal premise that no such easement could have been acquired because the land conveyed had legal access to State Road 3 at the time.

The rulings were erroneous and as a consequence of them this case should be reversed for a new trial. The motion in limine and the objections which were sustained at trial prevented the State from having the opportunity of establishing the factual predicate from which the jury might have concluded that an easement was reasonably necessary for the fair enjoyment and development of the parcel sold Innkeepers as a motel site.