**J. Frank HARTWIG, et al, Appellants-Defendants,**

v.

**T. Brooks BRADEMAS, Appellee-Plaintiff.**

No. 3–381A74.

Court of Appeals of Indiana, Third District.

July 29, 1981.

Rehearing Denied Sept. 10, 1981.

Roland Obenchain, South Bend, for appellants-defendants.

F. Richard Kramer, Michael C. Murphy, Kramer, Jaicomo & Snyder, South Bend, for appellee-plaintiff.

STATON, Judge.

This appeal concerns the permanent injunction granted against J. Frank Hartwig, et al., prohibiting a continuing trespass, committed by disposing of water from the property of Hartwig, et al., onto the property of T. Brooks Brademas, and the award to Brademas of damages in the amount of $8,800.00.

100 Center Company, a limited partnership, was formed to develop real estate.[1] It constructed an apartment house on part of its property. During construction of the foundation for the apartment house, a subterranean spring was uncovered. A drainage system was constructed to carry the spring water, the runoff from the roof, and water from the basement floor drains. The drainage system ended north of the apartment house.

100 Center Company sold part of its real estate and the apartment house to Sedgwick House (Sedgwick).[2] Later, it sold a parcel of real estate north of the apartment house to T. Brooks Brademas. In *Brademas v. Hartwig* (1977), Ind.App., 369 N.E.2d 954, we decided that the deed executed by 100 Center Company to Brademas created an easement in favor of Sedgwick.[3] The easement was set forth as follows:

> "An easement for roadway, parking purposes and for the drainage of surface waters and waters discharged from the roof and floor drains of 'Sedgwick House' over, along and across the following described real estate:" [The description of Easement "Z"]

The Sedgwick drainage system crossed through Easement Z and deposited its water north of Easement Z on the real estate Brademas had bought (see diagram). Brademas had planned to develop his real estate; however, the waters deposited by the drainage system upon his real estate outside Easement Z prevented the development of the property.

The trial court permanently enjoined Sedgwick from trespassing on the property of Brademas and awarded Brademas $8,800.00 for the two years he had been unable to develop the property. In their appeal, Sedgwick raises the following issue: Is the judgment of the trial court contrary to law because it is not supported by sufficient evidence?

We affirm.

DIAGRAM

Sedgwick argues that its easement is not confined strictly to Easement Z. Sedgwick argues that the drain was installed when

1. J. Frank Hartwig and John Schindler are the general partners of 100 Center Company. Several individuals are the limited partners.

2. Sedgwick is a limited partnership with 100 Center Company, Hartwig and Schindler as general partners. Hartwig, et al., shall hereinafter be referred to as Sedgwick.

3. Brademas originally filed a complaint in three paragraphs. Paragraph I sought injunctive relief and damages resulting from an alleged continuing trespass. The trial court held that it was without jurisdiction to decide the issues formed by Paragraph I. In *Brademas v. Hartwig, supra*, we remanded the issues formed by Paragraph I to the trial court. In the resulting bench trial, the trial court granted the injunction which is now being appealed.

the present two parcels of land had a common owner. When the land was divided into two parcels, Brademas' property had "an apparent and obvious servitude" in favor of the dominant estate, now owned by Sedgwick. Sedgwick argues that the easement is reasonably necessary for the fair enjoyment of its estate; therefore, it has an implied easement beyond the perimeters of Easement Z.

Brademas argues that an implied easement does not exist because Sedgwick did not meet its burden of proof on two elements necessary for an implied easement: (1) the servitude must be permanent; (2) the servitude must be reasonably necessary for the fair enjoyment of the dominant estate. We agree.

 As an appellate court, we neither weigh the evidence nor substitute our judgment for that of the trial court merely because we might be disposed to rule differently. It is only where the evidence is without conflict and leads to one conclusion and the trial court has reached the opposite conclusion that we will set aside the decision of the trial court as being contrary to law. *Hogan Transfer and Storage Corp. v. Waymire* (1980), Ind.App., 399 N.E.2d 779, 784.

In *Searcy v. LaGrotte* (1978), Ind.App., 372 N.E.2d 755, this Court stated that in order for there to be an easement implied by law, the servitude must be (1) obvious, (2) permanent, (3) in use at the time the ownership in the land is severed, and (4) reasonably necessary for the fair enjoyment of the party benefited, not merely convenient or beneficial.

The parties agree that the drainage system was obvious and in use at the time of the severance. However, Sedgwick failed to prove that the drainage system, as it existed at the time of the severance, was permanent and reasonably necessary.

 James D. Sellers, the construction superintendent for the apartment house testified that they laid the drainage tile and had it end north of the present Easement Z.

He stated that where they stopped laying tile they "just dug a ditch out there to let it [the water] dissipate or to drain off into the park until we were to get an open ditch all the way to the river."

On cross examination, the following took place:

"Q. Now, you say that you ran this tile north of Sedgewick [*sic*] House and I think I understood you to say—if I understand it, you then dug a ditch into which you dumped the water?

"A. [Sellers] Yes sir.

"Q. From that point it sort of pooled up and ran off?

"A. It could have actually. We just let it sort of dissipate. It was a temporary situation.

"Q. What you did was a temporary situation?

"A. For that water there, yes."

Sedgwick did not have an implied easement because the drainage system was temporary and merely convenient or beneficial, not reasonably necessary for the fair enjoyment of its land.[4]

 Sedgwick also argues that the trial court should have found that the reserved easement created an easement outside of the described area. The rule in Indiana has long been that

"[W]here the thing omitted is of the same class and kind as those expressed, and where the same complete and effectual disposition or control of the same may be exercised by the parties to the instrument, the expression of one or more implies the exclusion of the others...."

*Lucas v. Rhodes* (1911), 48 Ind.App. 211, 94 N.E. 914, 920.

If 100 Center Company intended Sedgwick's easement for drainage to be larger than the specifically described area, 100 Center Company should have included the area in the drainage easement.

Sedgwick also argued that damages were improperly awarded because there was no

---

**4.** Several different methods were available to Sedgwick to dispose of its water.

trespass on the property of Brademas. This argument is unpersuasive as there was a trespass.

Sedgwick also argues that damages were determined by an improper standard. This naked assertion, without citation to authorities, falls short of the standard prescribed for arguments to this Court. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). The issue is waived. AR. 8.3(A)(7).

Judgment affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.