Thomas E. FISCHER and Barbara E. Fischer, Plaintiffs-Appellants,

v.

Sam L. REVETT and Diana E. Revett, Defendants-Appellees.

No. 4–681A25.

Court of Appeals of Indiana, Third District.

July 19, 1982.
Rehearing Denied Oct. 1, 1982.

Robert E. Ross, Donald B. Steininger, Fort Wayne, for plaintiffs-appellants.

Marvin S. Crell, Tourkow, Danehy, Crell & Rosenblatt, Steven R. Schafer, Fort Wayne, for defendants-appellees.

GARRARD, Judge.

The Fischers, owners of an alleged servient tenement, appeal the trial court's decision establishing an implied easement in favor of the Revetts, owners of the claimed dominant tenement.

Revetts and Fischers are neighbors with a common border approximately 330 feet long running from the street side of their lots to the back line of the lots. A driveway on Revetts' lot terminates in a loop, a portion of which encroaches upon Fischers' lot. This encroachment, in the shape of an arc, consisting of the eastern portion of the loop, intrudes about ten feet into Fischers' land and constitutes the basis for the suit. Except for this encroachment Revetts' driveway is within the boundaries of their lot and provides them with uninterrupted access to the street.

Both parcels were once part of a larger tract of land owned by Willis Van Alstine. He sold the Revetts their lot in 1970, and the Fischers' predecessors in title their lot in 1967. The Fischers purchased in 1978. Prior to the sale of either lot, Mr. Van Alstine farmed and used the driveway loop as a tractor turn-around because a barn was at its north end. The Revetts admit improving the driveway with gravel, but the record is ambiguous as to its surface before the Revetts' improvements.

In September 1979 the Fischers began the installation of a fence on their lot along their property line with the Revetts. However, Sam Revett removed the fence posts from their concrete bases where they intersected the encroaching driveway and parked his motor home to block further attempts to erect a fence. Thereafter the Fischers brought this action to determine the legal status of the encroaching portion of the driveway and to recover damages for trespass and for destruction of the partially completed sections of fence.[1]

The trial court held that an implied easement existed because it found that:

1. The use of the disputed area as a driveway existed for many years prior to the severance of the two estates.

2. The use was not absolutely necessary but was of a character looking to permanency.

3. Discontinuance of the use would involve an actual and substantial rearrangement of the Revetts' estate for it to be as comfortably enjoyed as before.

4. The use is reasonably necessary for the fair enjoyment of the Revetts' property.

Four issues are raised for review. However, the first three issues are derivative of the last which we shall address. Simply stated, the Fischers argue that the trial court erred in ruling that the Revetts had acquired an implied easement for driveway purposes because such a finding was contrary to law and was not supported by sufficient evidence.

The leading Indiana decision concerning implied easements is *John Hancock Mutual Life Ins. Co. v. Patterson* (1885), 103 Ind. 582, 2 N.E. 188, where the court found such an easement was implied for the wall of a dwelling. The general rule is that

---

1. The trial court determined by summary judgment that there was no prescriptive easement. That determination has been accepted by the parties.

where, during the unity of title, an owner imposes an apparently permanent and obvious servitude on one part of the land in favor of another part and the servitude is in use when the parts are severed, then if the servitude is reasonably necessary for the fair enjoyment of the part benefited, the law will imply an easement for its continuance. *See also Searcy v. LaGrotte* (1978), Ind.App., 372 N.E.2d 755 and cases cited therein.

"A mere temporary or provisional arrangement, however, which may have been adopted by the owner for the more convenient enjoyment of the estate, can not constitute the degree of necessity or permanency which would authorize the engrafting upon a deed, by construction, of a right to the enjoyment of something not within the lines described. To justify such construction, it must appear from the disposition, arrangement and use of the several parts, that it was the owner's purpose in adopting the existing arrangement to create a permanent and common use ... and it must be reasonably inferable from the existing disposition and use that it was intended to be continuous, notwithstanding the severance of ownership."

103 Ind. at 588, 2 N.E. 188.

■ The court also observed that it was proper to consider whether continuance of the use is indispensable to the future enjoyment of the estate, and the practicality, effect and expense of changing the use. Such considerations are relevant not to determine "necessity" but as evidence bearing on the probability that the purchaser, as a reasonable man, took the conveyance with the expectation that the existing use would be continued. 103 Ind. at 589, 2 N.E. 188.

Considering these matters the court concluded the wall of the dwelling must have been intended to continue where it was. Upon these same considerations the court in

*Searcy, supra,* concluded that no easement could be implied for the portion of a driveway leading to what had formerly been the barnyard of the farm.

■ Moreover, it must be stressed that an implied easement arises at the time of the severing conveyance because of the circumstances *then* existing, or it does not arise at all. *State v. Innkeepers of New Castle, Inc.* (1979), Ind., 392 N.E.2d 459.

■ The evidence before us shows that the driveway loop in question was used as a tractor turn-around in front of the barn by Mr. Van Alstine who farmed the property. When Van Alstine deeded the property on which the loop encroached, he did so only after the Fischers' predecessors in title agreed to allow him continued use of that portion of the loop and of a strawberry patch behind it. This constitutes the entire evidence as to the use and status of the loop before severance of the property.

The trial court was correct in finding that the driveway loop had been used for many years prior to severance; however, we are forced to disagree with its other findings and the legal conclusions based on them because it is apparent that they were based not upon the circumstances at the time of severance, but upon subsequent happenings.[2] The trial court found that the use was of a character looking to permanency. The loop was a barnyard turn-around and Mr. Van Alstine asked only that he be allowed to continue using it when he conveyed the claimed servient tenement. This evidences no intent on his part that the use blossom into a permanent easement, especially since he intended to soon abandon farming due to his advancing age, and since the barn was destroyed when the land became a residential lot.

As for causing the Revetts to substantially rearrange their estate, the evidence of the circumstances at the time of severance again fails to support the court's finding.

2. As the dissent points out, no timely request was made for special findings pursuant to TR 52. After a general judgment had been entered the parties by stipulation requested the court to specify the nature and extent of Revetts' inter-est and the court agreed to do so. It then entered the findings and conclusion we refer to. Under these circumstances we consider the parties bound by the findings made.

As in *Searcy* most of the driveway is on Revetts' land. The barn which the turn-around served was not a part of their use and the garage they use had not been constructed. From the photographs in evidence it appears the loop could have been relocated so as not to encroach upon Fischers.

Finally the court found that the use was reasonably necessary for the fair enjoyment of the Revetts' property. Indiana has adopted the more liberal "reasonably necessary" requirement rather than a requirement of absolute necessity. *Hartwig v. Brademas* (1981), Ind.App., 424 N.E.2d 122; *Searcy, supra; Krueger v. Beecham* (1945), 116 Ind.App. 89, 61 N.E.2d 65; *John Hancock, supra.* This does not, however, do away with the requirement that some necessity be shown. It must be remembered that when an implied easement is found we are engrafting upon the deed of the parties a condition not expressed therein. Here the Revetts' use of the loop for driveway purposes is clearly not necessary for their ingress or egress. Thus, the case is unlike *Krueger v. Beecham, supra,* where an implied easement was found reasonably necessary because the access alternatives available at the time of severance provided no practical means of ingress or egress to or from the dominant tenement's house and would be dangerous for ordinary traffic and impossible for heavy traffic. This situation was held to create a reasonable necessity, even though no absolute necessity was found, since an alternative though limited access to the property was available. Here, however, the use of the loop in no way affects access for residential purposes. The loop merely provides one means to turn around rather than back out of the driveway. This use is more akin to convenience than to necessity and places the case with the genre of *Searcy.*

The facts do not give rise to the necessary inference that the creation of a permanent easement was within the reasonable intendment of the parties at the time of the severance. Therefore, it was error to invoke the extreme remedy of creating by implication of law an easement in favor of the Revetts' estate to the derogation of the Fischers' estate. The trial court is reversed, and this cause is remanded for such further proceedings as may be necessary.

Reversed and remanded.

HOFFMAN, P. J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I must respectfully dissent from the majority opinion because there is sufficient evidence to support the trial court's judgment that Revetts have an implied easement over Fischers' property.

The majority disagrees with the trial court's judgment because some of its findings do not support the conclusion of the judgment. The majority opinion states:

"The trial court was correct in finding that the driveway loop had been used for many years prior to severance; however, we are forced to disagree with its other *findings* and the legal conclusions based on them because it is apparent that they were based not upon the circumstances at the time of severance, but upon subsequent happenings."

Majority opinion, page 997 (emphasis added).

The "findings" which the majority refers to are not special findings of fact under Ind.Rules of Procedure, Trial Rule 52(A). Since they are not special findings, they are merely surplusage to the trial court's general finding that Revetts have an implied easement across Fischers' property. As surplusage, they can not render the judgment erroneous.

Special findings of fact were not required in this case and the parties did not make a written request for special findings prior to the commencement of trial. Therefore, the "findings" referred to by the majority are reviewed on appeal as special findings of fact only if they were made upon the trial court's own motion. TR. 52(A). However, the record indicates that the trial court did not make these findings upon its own mo-

tion. Instead, the trial court was merely clarifying its original judgment pursuant to the request of both parties.

The trial court's original judgment reads as follows:

"This cause having previously been taken under advisement, the Court now enters judgment for the defendants [Revetts] and against the plaintiffs [Fischers] at plaintiff's costs."

*Record*, at 189. Both Fischers and Revetts requested the trial court to modify the judgment "for the purpose of specifying and identifying the nature of the legal right vested in the Defendants pursuant to which right this Court entered judgment for the Defendants." *Record*, at 190. The trial court complied with both parties' request by making the following entry:

"Parties file Stipulation requesting the Court to modify its judgment entered January 20, 1981 by specifying the legal right vested in defendants pursuant to which judgment was entered. Accordingly, the judgment is modified to include the following findings:

"1. The use of the disputed area as a driveway existed and was used for many years prior to the severance of the two estates.

"2. The use, while not absolutely necessary for ingress to and egress from the defendants' property, was of a character looking to permanency.

"3. Discontinuance of the use would obviously involve an actual and substantial rearrangement of defendants' estate to the end that it would be as comfortably enjoyed as before.

"4. Defendants acquired an implied easement for driveway purposes over plaintiffs' property.

"5. The use is reasonably necessary for the fair enjoyment of defendants' property.

"6. The dimensions of the easement are set out in a survey, copy of which was admitted in evidence in this cause as Plaintiffs' Exhibit 1; copy of said survey is attached to these findings and incorporated in them by reference."

*Record*, at 192. Because the statements in the above entry were made at the request of the parties, and because that request was not filed prior to the admission of evidence, the statements are not special findings of fact under TR. 52(A).

Where the trial court does not make special findings of fact, the appeal is from a general judgment. *Wilson v. Upchurch* (1981), Ind.App., 425 N.E.2d 236, 238; *Llewellyn v. Beasley* (1981), Ind.App., 415 N.E.2d 789, 792 (*reh. denied*). On review of a general judgment, this Court must affirm the trial court's decision if it is sustainable on any legal theory which is supported by the evidence, *Wilson, supra*, at 238; *Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301, 1304, even if the trial court gave an erroneous reason for its decision. *Husted v. McCloud*, (1982), Ind.App., 436 N.E.2d 341 at 347; *Kranda v. Houser-Norborg Medical Corp.* (1981), Ind.App., 419 N.E.2d 1024, 1042 (*trans. denied.*) Therefore, the trial court's decision that Revetts have an implied easement must be affirmed if there is sufficient evidence in the record to support that decision, even if the statements made by the trial court in its modified judgment indicate that the decision was based on the wrong reasons.

In determining whether there is sufficient evidence in the record to support the trial court's judgment, this Court may not weigh conflicting evidence but may consider only that evidence and reasonable inferences therefrom most favorable to the judgment. *Van Orman, supra*, at 1304. The evidence and reasonable inferences therefrom most favorable to the judgment reveals that the adjacent parcels of land now owned by Revetts and Fischers were once a part of a farm owned by a man named Van Alstine. Van Alstine sold the east parcel, now owned by Fischers, to Fischers' predecessor in title, the Horst-

mans, and kept the west parcel, which he eventually sold to Revetts.[1]

After Horstmans had started to build their house on the east parcel, an agent of the county informed them that they were building too close to Van Alstine's property. Instead of moving their building site, Horstmans asked Van Alstine if they could buy a ten foot wide strip of land from Van Alstine's west parcel, adjacent to their east parcel. Van Alstine agreed to sell Horstmans the ten foot wide strip if Van Alstine could continue to use that portion of his turnaround drive which would then be on Horstman's property. Van Alstine had been using this turnaround driveway for many years. Horstmans agreed, replying that they didn't want that part of the driveway within the ten foot strip, just the title to the strip so that they could continue to build their home where it had been started. Later, when Van Alstine sold the west parcel to the Revetts, he told them that the part of his driveway turnaround on Horstmans' property was included in the sale of the west parcel.

Based on the evidence set forth above, one of two legal relationships was impliedly created between Van Alstine and Horstmans regarding Van Alstine's use of that portion of his driveway within the ten foot wide strip he conveyed to Horstmans. Either Van Alstine was impliedly reserving an easement across the strip of land he was conveying to Horstmans, or Horstmans were impliedly granting Van Alstine a revocable license to continue to use his own driveway. I believe it was reasonable for the trial court to infer from the circumstances surrounding the conveyance that Van Alstine was impliedly reserving an easement.

The elements which must be proved to establish an implied easement have been succinctly set forth in *Searcy v. LaGrotte* (1978), Ind.App., 372 N.E.2d 755:

> "The general rule is that when the owner of an estate imposes an obvious and permanent servitude on one part in favor of another part, and at the time ownership is severed the servitude is in use and reasonably necessary for the fair enjoyment of the part benefited, an easement will be implied by law." (Authorities)[2]

*Searcy, supra*, at 757.

Applying the *Searcy* elements to the facts in the present case, Revetts had to prove that when Van Alstine sold the ten foot strip to Horstmans the portion of the driveway turnaround within that ten foot strip was obvious, permanent, in use, and reasonably necessary for Van Alstine's fair enjoyment of the west parcel. Fischers essentially contend that Revetts failed to introduce sufficient evidence that the portion of the driveway within the ten foot strip was

---

1. The diagram below illustrates the property situation discussed in the text:

WEST PARCEL
(Originally owned by Van Alstine, now owned by Revetts)

EAST PARCEL
(Sold by Van Alstine to Horstmans, now owned by Fischers)

DRIVE

↔
10'

↑
N

2. Unlike some jurisdictions, Indiana requires "reasonable necessity" for both easements impliedly granted and easements impliedly reserved. *Shandy v. Bell* (1934), 207 Ind. 215, 222, 189 N.E. 627, 630; *John Hancock Mutual Life Insurance Co. v. Patterson* (1885), 103 Ind. 582, 586, 2 N.E. 188, 192.

"permanent" and "reasonably necessary." I believe Revetts sufficiently established both of these elements.

In the context of implied easements, a servitude is considered permanent if it had continued for so long before the conveyance is made that it would be reasonable to expect it to continue after the conveyance is made. *See* 2 G. Thompson, *Commentaries on the Modern Law of Property*, § 351, at 292 (1980). In this sense, the word permanent means a use which is not temporary or subject to change but which is continuous and enduring in character. In accordance with this definition, many states have understandingly interchanged the word continuous for the word permanent; continuous being a more accurate description of what must be proved. *E.g.s.*, *Haynie v. Brenner* (1976), 216 Va. 722, 222 S.E.2d 546, 548; *Baylor v. Thiess* (1971), 2 Ill.App.3d 582, 277 N.E.2d 154, 154; *See*, 2 *American Law of Property* § 8.41 & 8.42 (A. J. Casner ed. 1952) (using "continuous" instead of "permanent" and "apparent" instead of "obvious").

The majority opinion intimates that in *Searcy, supra*, a drive on a farm which had been in use for over fifty years was not "permanent" within the definition of implied easements because it was "merely a dirt road." *Searcy, supra*, at 758. I disagree with *Searcy* to the extent it so holds:

"The requirement that the quasi-easement must have been 'permanent,' or 'continuous' means only that the use involved shall not have been occasional, accidental or temporary, but shall have been of such a character as to enable the claimant to rely reasonably upon the continuance of such user." (Footnote omitted).

3 R. Powell, *Powell on Real Property*, ¶ 411, at 34–85 (1981); *Cf. John Hancock Mutual Life Insurance Co. v. Patterson* (1885), 103 Ind. 582, 589, 2 N.E. 188, 193 (considering the "probability that the purchaser, as a reasonable man, took the conveyance with the expectation that the existing use would be continued") [hereinafter cited as *John Hancock*]

Although Indiana has continued to use the term "permanent", this state tacitly recognized in *John Hancock* that permanent essentially meant continuous. As was quoted in *John Hancock:*

"It may be considered as settled in the United States, that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all *apparent* and *continuous* easements or incidents of property which have been created or used by him during the unity of possession, though they could then have had no legal existence apart from his general ownership." (Citation omitted), (Emphasis added).

*Id.*, at 587, 2 N.E. 188.

The Indiana Supreme Court further held in *John Hancock* that "a mere temporary or provisional arrangement . . . can not constitute the degree of necessity or permanency" required to establish an implied easement. *Id.*, 103 Ind. at 588, 2 N.E. at 191. Towards establishing an implied easement "it must be reasonably inferable from the existing disposition and use that it was intended to be continuous, notwithstanding the severance of ownership." *Id.*

As acknowledged by the majority, Revetts sufficiently established that "the driveway loop had been used for many years prior to severance. . . ." [3] Majority opinion, page 997. Van Alstine need only have used that portion of his driveway on the east parcel as regularly as any farmer might use a turnaround near his barn or resident near his home. By showing that Van Alstine's use of the turnaround loop was not occasional or temporary the Revetts established that the servitude was "permanent."

Revetts also sufficiently established that Van Alstine's use of the driveway turnaround was "reasonably necessary" for his fair enjoyment of the west parcel. Revetts did not need to establish, as the majority suggests, that their use of the turnaround was necessary for their ingress and egress.

In attempting to define what is meant by "reasonably necessary", Indiana courts have

3. Mr. Revett testified that the driveway had been there since at least 1945.

held that while the servitude must be more than merely convenient or beneficial, it need not be strictly necessary. *Shandy v. Bell* (1934), 207 Ind. 215, 222, 189 N.E. 627, 630; *John Hancock, supra,* 103 Ind. at 589, 2 N.E. at 192; *Searcy, supra,* at 758. Another guide in determining the degree of necessity is the permanency, apparent purpose, and adaptability of the servitude. *John Hancock, supra,* 103 Ind. at 589, 2 N.E. at 192; *Searcy, supra,* at 758.

As I have previously shown, the turnaround drive is "permanent" as that term is used in the implied easement definition. Next, the apparent purpose of any driveway turnaround is to enable the user to drive forward when exiting the drive, instead of backing out. A driveway turnaround also gives the owner more driveway in which to park vehicles and greater access to different parts of his land and outbuildings, such as Van Alstine's barn, which may be situated around the turnaround. As to adaptability, without that part of Van Alstine's drive on Horstmans' property the drive has no turnaround. To maintain a turnaround the drive would have to be relocated which, testimony established, would have required extensive re-landscaping.

Besides the above evidence, Van Alstine orally conditioned the sale to Horstmans of the ten foot strip on Van Alstine's continued use of that portion of his turnaround which would then be on Horstmans' property. Also, it was Horstmans' understanding that they were not buying that part of the driveway within the ten foot strip, just the title to the strip so that they could continue to build their home where it had been started. Finally, Van Alstine represented to Revetts that the part of his driveway turnaround on Horstmans' property was included in the sale of the west parcel.

When determining if the turnaround was reasonably necessary for Van Alstine's fair enjoyment of the west parcel, it must be remembered that an implied easement is based on the unexpressed intent of the parties as inferred from the circumstances existing at the time ownership is severed. 2 G. Thompson, *Commentaries on the Modern Law of Real Property,* § 351, at 295 (1980).

"The inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves. In the latter aspect, the implication approaches in fact, if not in theory, crediting the parties with an intention which they did not have, but which they probably would have had had they actually foreseen what they might have foreseen from information available at the time of the conveyance. In determining implications of this character, the tendency is to isolate and to assign a specific value to such factors as frequently recur. Thus, it may be said that where the factor of necessity exists a particular implication arises. Properly, however, the implication involves a consideration of all the factors present. They are variables rather than absolutes. None can be given a fixed value. Each affects the decision as to the implication arising from all in a different degree in different situations."

Restatement of Property § 476, comment a at 2978 (1944). This rationale was recognized in *John Hancock.*

"The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give effect to what may be supposed to have been, considering the manner of the use, the reasonable intendment of the parties . . . ."

*John Hancock, supra,* 103 Ind. at 587, 2 N.E. at 191.

While I concede that the evidence on reasonable necessity was not overabundant, I believe it was sufficient in light of the overall circumstances surrounding the conveyance, including the understanding of the parties regarding their relationship. Because there is sufficient evidence and reasonable inferences therefrom from which the trial court could have found that Revetts have an implied easement over Fischers' property, the general judgment of the trial court should be affirmed.