Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEYS FOR APPELLANTS:

**JOHN W. RICHARDS**
**HOLLY M. HARVEY**
Bunger & Robertson
Bloomington, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY A. BULLMAN**
**MICHAEL L. CARMIN**
Andrews, Harrell, Mann,
 Carmin & Parker, P.C.
Bloomington, Indiana



FILED
Mar 25 2013, 9:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD G. ARNOLD and<br>B. CANDI ARNOLD, | ) | |
| | ) | |
| Appellants-Defendants/Counterclaimants, | ) | |
| | ) | |
| vs. | ) | No. 53A04-1207-PL-368 |
| | ) | |
| ALLEN ROBERT LINNEMEIER and<br>KATHY SUE LINNEMEIER, | ) | |
| | ) | |
| Appellees-Plaintiffs/<br>Counterclaim Defendants. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Erik C. Allen, Special Judge
Cause No. 54C06-0807-PL-1668

**March 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a bench trial, Ronald G. Arnold and B. Candi Arnold (collectively "the Arnolds") appeal the trial court's judgment in favor of Allen Robert Linnemeier and Kathy Sue Linnemeier (collectively "the Linnemeiers"), which granted the Linnemeiers an easement by prior use and an irrevocable license across the Arnolds' land for purposes of ingress and egress. The Arnolds raise three issues; however, we find the following issue to be dispositive: whether the trial court erred when it determined that the Linnemeiers possess an easement by prior use across the Arnolds' property.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Harding Development Corp. ("Harding") owned undeveloped property in Monroe County. The rural property included steep inclines, ravines, and ridges. In or around 2000, Harding developed the property into an administrative subdivision containing four tracts ("the Tracts") of land, each with access to Earl Young Road. Specifically, pursuant to local ordinance, each of the tracts included a fifty-foot-wide strip of land that accessed Earl Young Road.[1] The fifty-foot-wide strips, which are reflected on the survey and the Harding Subdivision Plat, are parallel and adjoining each other, running eastward from Earl Young Road to the major portion of each of the Tracts.

Prior to the time that Harding divided the land and sold it to anyone, John Loudermilk ("Loudermilk"), the president of Harding, constructed a gravel drive ("Gravel Drive") on the

---

[1] A Monroe County administrative subdivision ordinance required each lot to have at least fifty feet of road frontage on an existing county right-of-way. *Appellant's App*. at 38-40; *Appellant's Supp. App.* at 54 (Arnolds' Reply Brief in Support of Motion for Summary Judgment citing Monroe County Zoning Ordinance Section 852-2.1).

2

property, and it was used to access the entire Harding property from Earl Young Road. It is this Gravel Drive that is the subject of the current dispute. The Gravel Drive meandered from Earl Young Road eastward on and along what later became the fifty-foot-wide strips of land on Tracts 1 and 2, using the flattest areas for the roadbed of the Gravel Drive. The majority of the Gravel Drive was within the fifty-foot-wide strip on Tract 2. The Gravel Drive is not reflected on the Harding Subdivision Plat or in the deeds to Tracts 1 and 2.

In January 2000, Harding sold Tract 3 to Richmond and Colleen Wells (collectively "the Wellses"), who in February 2004 sold the property to Terry and Sara Fischer (collectively "the Fischers"). On September 24, 2001, Harding sold Tract 1, approximately thirty-one acres, to the Linnemeiers. Loudermilk handled the transaction with the Linnemeiers. Prior to the purchase, Allen Linnemeier ("Mr. Linnemeier"), accompanied by Loudermilk, visited and inspected the property at least several times. Loudermilk told Mr. Linnemeier that use of the Gravel Drive came with the purchase of Tract 1, and advised Mr. Linnemeier that the Gravel Drive served as access for Tracts 2 and 3 as well. The fifty-foot-wide strip on Tract 1 extends 2,092 feet from Earl Young Road to the main part of Tract 1. Also, before purchasing, the Linnemeiers negotiated with Loudermilk to adjust the northern border of Tract 1 to the north, in order to include a ridge on higher ground. The Linnemeiers desired to acquire that extra three acres of land to prevent the possibility of anyone else building a home there, which would then overlook the Linnemeiers' property, on which they

3

intended to build, and did build, a small lake for their personal recreational use.[2]  The change in the lot line resulted in two revisions to the original Harding Subdivision Plat.

Shortly after purchasing, the Linnemeiers hired Loudermilk to build a dam and create a lake and paid Loudermilk $38,000 for that service.  The Linnemeiers used the Gravel Drive during the construction of their lake and thereafter on those occasions when they came to the property to fish and camp.  In 2001, Loudermilk asked Mr. Linnemeier to contribute to the purchase of gravel for the Gravel Drive, and he did so.

In July 2003, the Arnold Excavating Company, owned by the Arnolds, purchased Tracts 2 and 4 from Harding.  *Tr.* at 119.  In September 18, 2004, title was transferred from the company to the Arnolds.  For reasons not clear in the record, at the time that the Arnolds were purchasing the land, Loudermilk showed Ronald Arnold ("Mr. Arnold") the original Harding Subdivision Plat, which did not reflect the Linnemeiers' prior purchase of the extra property north of Tract 1 that included the ridge; therefore, the Arnolds believed they were purchasing that land.  The Arnolds purchased the land with the intention of building one or more personal residences for themselves and family members and a large building to store heavy equipment used in their excavating business.  The Arnolds used the Gravel Drive to access their property and were aware that the Linnemeiers did so, too.  In September 2003, Mr. Arnold asked Mr. Linnemeier to contribute to the purchase of stone for the Gravel Drive, and he did so.

---

[2] The Linnemeiers did not build a home on the property.

4

The Arnolds were aware that the Linnemeiers used the Gravel Drive and, for a period of time, did not object. At some point, Arnold had his property surveyed and discovered that the Gravel Drive crossed into the Linnemeiers' fifty-foot strip in a couple of places, but that most of it was on Tract 2. Thereafter, the Arnolds erected a gate on the entrance to the Gravel Drive, stating that they desired security for their home and equipment building, and they gave the Linnemeiers a key. Later, however, the relationship and cooperation declined, as the parties could not agree about the future of the Gravel Drive, with the Arnolds seeking a better standard of driveway that did not require "constantly maintaining it," and the Linnemeiers not desiring anything more than what existed. *Id*. at 80. The Arnolds changed the lock at the gate, and the Linnemeiers could not use the Gravel Drive. At times, Mr. Linnemeier parked his vehicle on his fifty-foot strip by Earl Young Road and walked back approximately one-half mile to his lake.[3]

Meanwhile, in 2004, the Fischers purchased Tract 3 from the Wellses, and the Fischers began the construction of their home. Mr. Fischer desired a more permanent road that required less maintenance than the Gravel Drive, and he agreed with the Arnolds to contribute to the cost of paving the Gravel Drive. In 2006, three years after purchasing the Tracts, the Arnolds began to build a paved driveway, which was completed in 2007. In the process of building the driveway, Mr. Arnold straightened some of the meanderings and relocated the drive entirely onto his fifty-foot-wide strip on Tract 2. The cost to the Arnolds,

---

[3] The record before us reflects that at or around the time that cooperation between the parties began to fail, Mr. Arnold had asked Mr. Linnemeier to sell the three acres on the ridge to him, and Mr. Linnemeier indicated he might be willing to do so in the future, but was not willing to sell his property at that time. *Appellants' App*. at 49-50.

who owned an excavating business, was between $80,000 and $100,000, with additional expenses for materials.

After completing the paved drive, Mr. Arnold asked Mr. Linnemeier to contribute toward the paving costs, but Linnemeier refused, maintaining that the Gravel Drive was adequate for his needs, which were primarily in summer and fall months, and he did not request or consent to the relocation of the drive onto Tract 2 or associated costs with paving it.

In July 2008, the Linnemeiers filed a complaint[4] against Ron Arnold Excavating, Inc., and in October 2008, the Arnolds were substituted as real parties in interest. The complaint alleged that the Linnemeiers possessed an implied easement by prior use and an irrevocable license to use the Gravel Drive.[5] *Appellants' Suppl. App.* at 8, 15, 18. The Arnolds filed a motion for partial summary judgment, to which the Linnemeiers responded and also requested summary judgment on their complaint. The trial court denied the requests for summary judgment without hearing. *Id.* at 67. The Arnolds requested and were granted permission to file an amended answer with affirmative defenses and counterclaim. Among other things, the Arnolds asserted as an affirmative defense that, if the trial court were to find the existence of an easement or license, additional proceedings would be required to determine the amount of contribution necessary by the Linnemeiers to the Arnolds. The

---

[4] The record does not include a copy of the Linnemeiers' complaint.

[5] In 2009, the Arnolds, by counsel, tendered a check to the Linnemeiers in the amount of $2,507.67 as remuneration for the amount that the Linnemeiers had contributed to the maintenance and upkeep of the Gravel Drive. The Linnemeiers, however, did not accept the check.

Arnolds' counterclaim asserted that the Linnemeiers' pond leaked onto the Arnolds' property, the Linnemeiers' property contains culverts that are plugged with debris and brush and are not properly maintained, which constitutes a nuisance and has caused damages to the Arnolds. The trial court bifurcated the counterclaim, preserving those issues for a subsequent jury trial. Prior to trial on the Linnemeiers' complaint, the Arnolds filed a request for the trial court to enter specific findings and conclusions.

In January 2013, the trial court held a bench trial. The testimony included that of Mr. Linnemeier, who agreed that the Harding Subdivision Plat does not reflect the Gravel Drive and that his deed to Tract 1 did not include an easement across Tract 2, although based upon Loudermilk's representations, Mr. Linnemeier believed they did not need an easement. Mr. Linnemeier understood from Loudermilk that the existing Gravel Drive was intended to be the permanent shared driveway and used for ingress and egress into Tract 1. When questioned about the feasibility of building his own paved driveway, Mr. Linnemeier described the existence of severe topographical constraints, such as steep ravines and a sharply inclined grade, which would require significant fill material to fill the ravine and raise the ground to a suitable road bed grade. He conceded that it would not be impossible, but it would be very difficult and expensive to create a new driveway entirely on Tract 1. Although Mr. Linnemeier did not obtain a separate estimate of what the cost would be, he believed it would be at least the same or more than what Mr. Arnold expended to build a paved driveway.

Mr. Arnold testified that, while he recognized that the Gravel Drive was shared, he believed, in contrast to Mr. Linnemeier's understanding, that it was never intended as a permanent driveway, and a new paved driveway would eventually need to be built to access their home and equipment building. Prior to the Arnolds' purchase, they confirmed that their deed did not contain an easement across their property, other than for utilities.

Loudermilk testified that he did not recall making any promises or representations to Mr. Linnemeier other than what appeared on the Harding Subdivision Plat and deed; however, he also acknowledged that he had "no recollection of the specifics" of the transactions in which he sold the Tracts. *Tr.* at 121-22. Although the Gravel Drive was not reflected on the Harding Subdivision Plat, Eric Deckard, the land surveyor who originally conducted and prepared the survey for Harding, testified that "we would not have been required to show a driveway on the plat." *Id.* at 13-14.

The parties seem to be in agreement that, by its nature, the Gravel Drive would erode and deteriorate, and it required maintenance and application of additional gravel. Mr. Arnold testified that periodically he used his company's excavating equipment to grade and repair the Gravel Drive. After the conclusion of trial, and with the agreement of the parties, the trial judge went to the subject property and examined the area in order to better grasp what the parties had been describing.

Subsequently, the trial court issued findings of fact and conclusions of law and judgment, which determined that the Linnemeiers possessed: (1) an easement by prior use of the property that was the Gravel Drive; and (2) an irrevocable license across Tract 2 to access

8

their property. The Arnolds filed a motion to correct error, which the trial court denied. The

Arnolds now appeal.

## DISCUSSION AND DECISION

### I.        Standard of Review

In this case, the trial court issued findings of fact and conclusions thereon pursuant to

Indiana Trial Rule 52. Our standard of review is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*McCauley v. Harris*, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010) (citing *Johnson v. Am.*

*Classic Mortg. Corp.* 894 N.E.2d 268, 270 (Ind. Ct. App. 2008)), *trans. denied*.

In this case, the Linnemeiers bore the burden of proof at trial and prevailed.

Therefore, the Arnolds are appealing from an adverse judgment. *Id.* at 313. When the trial

court enters findings in favor of the party bearing the burden of proof, the findings are clearly

erroneous if they are not supported by substantial evidence of probative value. *Id.* We will

affirm a judgment where we find substantial supporting evidence, unless we are left with a

definite and firm conviction that a mistake has been made. *Id.*

9

## II.    Easement by Prior Use

The trial court's findings and conclusions thereon recognized the existence of an easement by prior use on the Arnolds' land.  Specifically, the trial court ordered:

A.    There exists an easement by prior use as a permanent ingress/egress easement for the benefit of the Linnemeier Real Estate, described in Exhibit 1 and also identified as Tract 1, Harding Administrative Subdivision, which easement is appurtenant to and runs with the land.

B.    The improvement to and the relocation of the ingress/egress easement benefitting Tract 1 entirely onto Tract 2 by Ron Arnold, the owner of Tract 2, does not extinguish or diminish the easement by prior use.  The Arnold Real Estate … identified as Tract 2, Harding Administrative Subdivision, is subject to the ingress/egress easement for use of the driveway on Tract 2 for the benefit of Tract 1.

*Appellants' App*. at 17.

Under Indiana law, an easement in favor of a grantee may be implied from a prior use of the adjoining property when the adjoining property and the property conveyed were at one time owned by the same person.  *Fischer v. Revett*, 438 N.E.2d 995, 996-97 (Ind. Ct. App. 1982) (citing *John Hancock Mut. Life Ins. Co. v. Patterson*, 103 Ind. 582, 586, 2 N.E. 188 (1885)); Eric D. Surette, J.D., 11 I.L.E. *Easements* §7 Easements Implied from Prior Use (2013).  More specifically, it has been explained,

[w]here, during unity of title, an owner imposes an apparently permanent and obvious servitude on one part of the land in favor of another part and the servitude is in use when the parts are severed, the law will imply an easement for its continuance *if the servitude is reasonably necessary for the fair enjoyment of the part benefited*.

*Hysell v. Kimmel*, 834 N.E.2d 1111, 1114 (Ind. Ct. App. 2005), *trans. denied* (emphasis added).[6] Since an implied easement adds terms to the deed that are not expressly stated in the deed, an easement implied from prior use will be found "'only where its creation was within the reasonable intention of the parties at the time of severance of the parcels.'" *Fischer*, 438 N.E.2d at 997 (quoting *John Hancock*, 103 Ind. at 588, 2 N.E. at 192). The application of the rule depends on the nature, arrangement, and use of the property, the relation of the parts to each other, and the degree of necessity of implying the grant of an easement. *Id.* A mere temporary or provisional arrangement which may have been adopted by the owner for the more convenient enjoyment of the estate cannot constitute the degree of necessity or permanency which authorizes the engrafting upon a deed of a right to the enjoyment of something not described in the deed. *Hysell*, 834 N.E.2d at 1114. It must be reasonably inferable from the existing disposition and use that it was intended to be continuous, notwithstanding the severance of ownership. *Id.* In determining whether an implied easement exists, courts consider "whether continuance of the use is indispensable to the future enjoyment of the estate, and the practicality, effect and expense of changing the use." *Id.*

---

[6] We note that a claim for an easement by necessity and a claim for an easement by prior use, while similar in origin, are separate and distinct claims. *Pardue v. Smith*, 875 N.E.2d 285, 291 (Ind. Ct. App. 2007). An easement by necessity will be implied only when there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without *any* access to a public road. *Wolfe v. Gregory,* 800 N.E.2d 237, 241 (Ind. Ct. App. 2003). On the other hand, an easement by prior use will be implied "if the servitude is reasonably necessary for the fair enjoyment of the part benefited." *Hysell v. Kimmel,* 834 N.E.2d 1111, 1114 (Ind. Ct. App. 2005), *trans. denied*.

The practicality and expense considerations are particularly relevant here, where the land in question is characterized by steep ravines, culverts, and inclines. In order to view the property himself, the special judge, following the conclusion of the presentation of evidence at trial, sought and received permission to visit the property in question. Thereafter, the trial court issued findings, including the following:

> 7. There are severe topographical constraints on and along the two 50-foot strips for Tract 1 and Tract 2 consisting of steep ravines and sharply inclined grade. The Stone Drive was placed in that portion of Tract 1 and Tract 2, within the 50-foot strips, that was the flattest and most usable portion for a driveway.
>
> ….
>
> 23. The Stone Drive serving as the access road to Tract 1 and Tract 2 was an open and obvious servitude imposed on Tract 1 and Tract 2 at the time of common ownership of all of the Harding Administrative Subdivision land. The owner, Harding Development severed the unity of ownership by conveying Tract 1 to Linnemeier and Tract 2 to Arnold.
>
> ….
>
> 25. The paved road created by Arnold used the majority of the existing Stone Drive as the roadbed.
>
> 26. The topography of the 50-foot strip on Tract 1 adjacent to the Stone Driveway includes steep inclines and deep, steep ravines, making construction of a road within the 50-foot strip of Tract 1 difficult and unreasonably expensive. Significant fill material would be required to fill the ravine and raise the ground to suitable road bed grade. Also, Linnemeier would be required to add culverts and to excavate the ground to cut down the inclined portion of the Tract in order to create an area suitable for the placement of a new drive. Linnemeier did not obtain a specific quote for the costs to create a new drive but the cost would exceed the $100,000 Arnold incurred to prepare the Stone Drive for a paved surface.
>
> 27. The placement of the Stone Drive meandering between the 50-foot strips of Tract 1 and Tract 2 was intentional in that it was placed in that portion

12

of the two 50-foot strips that was then existing as reasonably level or reasonably flat and suitable for a driveway.

28.     Linnemeier relied upon the existing Stone Drive as an easement for access to Tract 1 and the express permission of John Loudermilk on behalf of Harding Development to utilize the Stone Drive when he purchased Tract 1.

*Appellants' App*. at 13-15.

The evidence presented supports the trial court's findings.  Linnemeier examined the land four or five times before purchasing it. The Gravel Drive existed at that time and extended the full distance eastward from Earl Young Road to Tract 1.  During the process of selling the property, Loudermilk told Mr. Linnemeier that the road served Tract 1 and would also serve the other Tracts once they were sold.  Based on Loudermilk's representations, Mr. Linnemeier did not believe he needed an easement.  After the Linnemeiers purchased the property in 2001, they hired Loudermilk to build a dam and lake on Tract 1; the Gravel Drive was used during that process, and the Linnemeiers contributed money toward the upkeep of the Gravel Drive.

After the Arnolds purchased their property in 2003, they too used the Gravel Drive and were aware and did not object that the Linnemeiers used it as well.  The Arnolds requested that the Linnemeiers contribute to the cost of gravel and maintenance at least once, and the Linnemeiers complied.  The Linnemeiers and Arnolds used the Gravel Drive for years before the Arnolds moved the Gravel Drive and paved a driveway on Tract 2.

The Arnolds contend that the Linnemeiers failed to satisfy their burden of proving that continued use of the Arnolds' real estate for the benefit of the Linnemeiers' real estate was "reasonably necessary," asserting, among other things, that the Linnemeiers had a fifty-foot-

wide strip of property accessing Earl Young Road, as required by ordinance for the subdivision, and they could have built a driveway on that, just as the Arnolds did on their strip. However, our inquiry is not whether it was at all possible for the Linnemeiers to do that. Rather, at this point, we examine whether there was probative evidence to support the trial court's decision that an implied easement over the Arnolds property was "reasonably necessary" for the fair enjoyment of the Linnemeiers' property. While some necessity must be shown, absolute necessity is not required. *Hysell*, 834 N.E.2d at 1115. We are satisfied that the trial court, in reaching its decision, carefully considered the "nature, arrangement, and use of the property," and determined that the original Gravel Drive was situated along the most level part of Tracts 1 and 2. Under the circumstances of this case, the original Gravel Drive was more than merely "convenient or beneficial"; rather, its use was reasonably necessary, particularly considering the terrain of the property. The requirements of *Hysell* have been met: (1) there was unity of title in Harding/Loudermilk; (2) who imposed an apparent and obvious servitude, the Gravel Drive, on one part of the land in favor of another; (3) the Gravel Drive was in use when the parts were severed and sold to various parties; and (4) the Gravel Drive was reasonably necessary for the fair enjoyment of the Linnemeiers' property. Further, it was reasonably inferable, based on Loudermilk's placement, use of, and statements about the Gravel Drive, including his statements to Mr. Linnemeier that the Gravel Drive served Tract 1 and also would serve other Tracts once sold, that its use was intended to be continuous. *Cf. Searcy v. LaGrotte*, 372 N.E.2d 755, 757 (Ind. Ct. App. 1978) (finding shared dirt road between two farms was only convenient and beneficial rather

14

than reasonably necessary, where purpose of road was to service barns situated on one parcel and landowner of that parcel had access to public road without passing over adjoining parcel).

Based on our standard of review, we conclude that substantial evidence of probative value supports the trial court's findings and conclusions thereon that an easement by prior use existed on and across the Arnolds' property, and its judgment was not clearly erroneous. Finding as we do that the trial court did not err when it determined the existence of an implied easement by prior use in favor of the Linnemeiers, we do not reach the issues of whether an irrevocable license in favor of the Linnemeiers also existed or the derivative issue of whether the Arnolds were bona fide purchasers without notice of that license. As a result of our decision today regarding the existence of an easement by prior use, the Arnolds' affirmative defense seeking contribution on the part of the Linnemeiers remains outstanding and appropriate for trial court determination, as well as the Arnolds' bifurcated counterclaim concerning alleged drainage from the Linnemeiers' property.

Affirmed.

MATHIAS, J., and CRONE, J., concur.

15